# United States District Court
# Central District of California

| | |
|---|---|
| KIM SPANGLER, Individually and as the Personal Representative for DENNIS HOWARD BREWER, Deceased,<br><br>Plaintiffs<br><br>v.<br><br>COUNTY OF VENTURA; WILLIAM SCHNEEKLOTH; AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>Defendants. | Case № 2:16-cv-09174-ODW-GJS<br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, IN PART, AND DISMISSING STATE-LAW CLAIMS [51]** |

## I. INTRODUCTION

Plaintiff Kim Spangler is the mother of decedent, Dennis Howard Brewer ("Brewer" or "Decedent"), and brings claims related to the death of her son following a police chase. (*See generally* First Am. Compl. ("FAC"), ECF No. 21.) Defendants County of Ventura and Deputy Sheriff William Schneekloth move for summary judgment on all of Spangler's claims, or, in the alternative, partial summary judgment on her First, Second, Third and Fourth causes of action. (Defs.' Mot. for Sum. Judg. ("MSJ") 2, ECF No. 51.) For the reasons below, the Court **GRANTS**, in part, Defendants' Motion, with respect to Spangler's First, Second, and Third causes of

action, and **DISMISSES** Spangler's remaining claims, without prejudice, for lack of jurisdiction.[1] (ECF No. 51.)

## II. FACTUAL BACKGROUND

Schneekloth is a Ventura County Sherriff's Deputy, and was on patrol in a marked 2015 Chevrolet Tahoe SUV (the "SUV"), on December 17, 2015. (Pl.'s Statement of Gen. Issues of Mat. Fact ("PSUF") No. 1A, ECF No. 62.) On the same day, Brewer was driving a 2016 Yamaha XT250 enduro motorcycle, on a suspended license. (*Id.* at 2A, 10A, 11A.) Brewer's license had been suspended for driving under the influence about a month earlier. (*Id.* at 11A) Later toxicology reports revealed that, on the day of the incident, he had significant methamphetamine and amphetamine levels in his blood. (*Id.* at 7A[2].)

During his patrol, Schneekloth saw Brewer traveling at approximately 60 mph, in a 40 mph speed zone, as Brewer approached railroad tracks. (*Id.* at 17A–18A.) Schneekloth also saw Brewer commit other traffic violations, including driving over a double yellow line, passing in an unsafe manner, and driving recklessly. (*Id.* at 19A–24A.) In light of this, Schneekloth activated his siren and lights to stop Brewer to address his traffic violations. (*Id.* at 25A.) Brewer did not pull over, despite being aware that Schneekloth was pursing him. (*Id.* at 26A, 29A, 31A.) Brewer continued to flee, and drove through a construction zone at approximately 60 mph. (*Id.* at 32A–33A.) The two continued the pursuit on a two-lane, winding road through undeveloped hills in Simi Valley, California. (*Id.* at 36A.)

Brewer eventually drove his motorcycle, which was capable of off-road travel, off the paved road, onto a dirt lot. (*Id.* at 38A–39A.) On the other side of the lot, there was a dirt hill with dried mud tire tracks leading toward the top of the hill. (*Id.*

---

[1] After carefully considering the papers filed in support of and in opposition to the Motions, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.
[2] Spangler objects to this and other facts. (Pl.'s Object. to Evid., ECF No. 61.) The Court **OVERRULES** Spangler's objection to this fact, and addresses the parties' objections in more detail in Section IV.A, *infra*.

at 40A–41A.) Brewer drove up the hill in one of the dried mud tire tracks, with Schneekloth still in pursuit. (*Id.* at 42A–46A.) While approaching the hillside, Schneekloth had been under the impression that the hill would provide Brewer an avenue for escape. (*Id.* at 51A.) It turned out that the hill culminated in a steep drop-off, with railroad tracks below. (*Id.* at 52A–54A.) The drop-off was not visible from the perspective of someone driving up the hill. (*Id.* at 54A.) Brewer ultimately fell from the hill to his death. (*Id.* at 57A.) Schneekloth did not know about the drop-off prior to pursuing Brewer. (*Id.* at 59A.) His SUV bottomed out before going over the edge, and then he backed it down the hill and got out of the car. (*Id.* at 62A–65A.) Schneekloth walked up the hill, peered over the side, and saw Brewer lying motionless and tangled in his motorcycle. (*Id.* at 66A–67A.) Schneekloth called for medical assistance, but Brewer died from the trauma. (*Id.* at 68A, 70A.)

The parties dispute exactly how Brewer fell off the hill. Spangler presents no admissible evidence, however, that Schneekloth's vehicle hit Brewer's motorcycle, causing the fall. (*Id.* at 93A–96A, 98A.) Spangler's own accident reconstruction expert, Mark Kittel, testified he would not be offering any opinions regarding the cause of the incident, nor could he find any evidence that there was contact between the two vehicles. (*Id.* at 99A–101A.) Defendants' accident reconstruction expert, Al Lowi, came to the same conclusion. (*Id.* at 102A–105A.) Moreover, Kittel opined that Brewer's motorcycle likely left the hill upright, rolling on its wheels, with Brewer on the motorcycle in a riding position. (*Id.* at 106A.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is

"genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out the material facts to which the moving party contends there is no genuine dispute. C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the

'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence files in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

Spangler brings three claims pursuant to 28 U.S.C. § 1983, under the Fourth and Fourteenth Amendments. (FAC.) Both parties lodge several objections to evidence, which the Court must address first.

### A. Evidentiary Issues

*1. Spangler's Objections to Dr. Vina Spiehler's Testimony*

Spangler objects to Defendants' Undisputed Material Facts ("DUMF") Nos. 5–9 because they rely on the opinions of Defendants' expert, Dr. Vina Spiehler. (Pl.'s Object. to Evid. ("Pl.'s Objections") 3–4, 5–7, ECF No. 61.) Dr. Spiehler's opinions should be excluded, Spangler argues, because Defendants did not comply with Federal Rule of Civil Procedure 26(a)(2)(B). Defendants concede that they forgot to include a list of cases where Dr. Spiehler previously testified when they served Spangler with his expert report. (Reply 9, ECF No. 64.)

Rule 37(c)(1) provides for exclusion of evidence where a party does not comply with the rules of disclosure. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). However, "[t]he information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless." *Id.* (citing Fed. R. Civ. P. 37(c)(1)). Here, Defendants' failure to include a list of Dr. Spiehler's prior testimony was harmless. For one, Dr. Spiehler noted in his report that he previously testified "numerous times" in state and federal courts, and that a list of cases were attached. (Dr. Spiehler's Report 1, ECF No. 61-1.) This alone should have alerted Spangler to Dr. Spiehler's testimonial history, and prompted Spangler's counsel to request a copy of the list. Instead, Spangler waited to raise the issue until she objected to Dr. Spiehler's declaration in support of Defendants' Motion for Summary Judgment. Spangler's actions were unreasonable, and she does not

demonstrate any harm. Accordingly, the Court overrules Spangler's objection on this ground.

Next, Spangler objects to Dr. Spiehler's testimony because she claims it does not pass scrutiny under *Daubert* and Federal Rule of Evidence 702. (Pl.'s Objections 6–7.) *Daubert* and its progeny require the Court to evaluate an expert's qualifications and methodologies to fulfill the Court's role as a "gatekeeper." *See Daubert v. Merrel Dow Pharms., Inc.*, 509 U.S. 579, 589–90 (1993). Spangler objects specifically to Dr. Spiehler's opinions that Brewer's actions were "consistent with the flight or fight behavior displayed by a person who is under the influence of methamphetamine and amphetamine…." (Spiehler Report 4.) Dr. Spiehler has a Ph.D in pharmacology and toxicology, who is also board certified in toxicology by the American Board of Forensic Toxicology. (*Id.* at 1.) Spangler argues that Dr. Spiehler is not qualified because he is not a behaviorist or psychologist and therefore cannot opine as the effects of methamphetamine on Brewer's actions. (Pl.'s Objections 7.)

Dr. Spiehler relies on medical literature in his report that discusses the effects of methamphetamine on a person's behavior, and adequately explains how the drug levels found in Brewer's body correspond to his course of action. (*See* Spiehler Report 2–4.) Dr. Spiehler does not opine that methamphetime caused Brewer's actions or the incident, only that his actions were "consistent with" the behavior of someone with high levels of methamphetamine in their system. The Court is satisfied that he is qualified to offer those opinions.

2.  *Spangler's Objections to Character Evidence*

DUMF Nos. 12–15 chronicle Brewer's prior convictions for driving on a suspended license, driving at speeds over 100 mph, and prior incarceration. (DUMF Nos. 12–15.) Spangler argues that these specific instances of conduct violate Federal Rule of Evidence 404(a) because Defendants use these incidents to prove that Brewer acted similarly on the date of the incident. *See Evans v. City of San Diego*, 913 F. Supp. 2d 986, 992–93 (S.D. Cal. 2012) (excluding videos of plaintiff's actions after

arrest, in § 1983 case, because they could not be used to show plaintiff's actions leading up to arrest and to demonstrate probable cause). Defendants respond that the prior acts are offered "to explain why [Brewer] failed to yield and instead chose to desperately flee from Deputy Schneekloth." (Reply 10.) However, the parties do not dispute that Brewer failed to pull over when Schneekloth activated his lights and siren, despite Brewer knowing that Schneekloth was pursuing him. (PSUF Nos. 26A, 29A.) Under these circumstances, the Court can draw no reasonable inferences as to what Defendants could rely on these prior bad acts for a reason other than to argue that Brewer acted similarly on the date of the incident.

Spangler also objects because Schneekloth did not know of these traits during the pursuit, and thus they could not have affected his decision to pursue Brewer. *See Grant v. City of Long Beach*, 315 F.3d 1081, 1090–91 (9th Cir. 2002) (affirming exclusion of information gained by officers post-arrest because it was not probative of what officers knew at the time of arrest). The Court agrees, and **SUSTAINS** Spangler's objections to DUMF Nos. 12–15.

   *3. Defendants' Objections to Spangler's Lay Opinion*

Defendants submit 29 pages of objections to the majority of Spangler's evidence. (Defs.' Objections to Evidence ("Defs.' Objections"), ECF No. 65.) Many of the objections rely on Defendants' argument that the evidence submitted by Spangler does not create a disputed fact, or actually support the proposition set forth in her separate statement. The Court only addresses the objections relevant to its ruling.

Most notably, Defendants object to opinion testimony offered by Spangler. After the incident, Spangler claims to have visited the scene and observed footprints on top of the hill, which she argues are her son's. (Declaration of Kim Spangler ("Spangler Decl.") ¶¶ 34–42, ECF No. 58.) Six months after the incident, Spangler received the boots her son was wearing on the date of the incident. (*Id.* at ¶ 33.) She claims to have recognized the print on the bottom of the boot, as matching the

footprint she observed six months earlier atop the hill where the incident occurred. (*Id.* at ¶¶ 36–39.) "Using an inked stamp pad, [she] made an imprint of the bottom of the boot, capturing the tread marks, and [she] transferred the inked boot print to a clear transparency." (*Id.* at ¶ 40, Ex. 1014E.) She also downloaded software that allowed her to take rather grainy snapshots of a video of the scene she had taken six months prior. (*Id.* at ¶¶ 37–39.) She placed the transparency on top of a screenshot of the scene where she believed she had seen her son's footprint. (*Id.* at ¶ 41.) Based on this process she claims: "the following tread imprint features matched: the diamond shaped toe of the boot, the three circles that descend on the right edge of the boot, and the wavy cross pattern on the left edge or the ball of the foot area on the toepad." (*Id.*) From this, she deduces that her son stopped at the top of the hill "because he had to have been stopped in order to put his foot down on the ground to make the boot impression that [she] found near the motorcycle tread mark." (*Id.* at ¶ 42.)

Spangler's own accident reconstruction expert, Mark Kittel, testified that performing the type of analysis Spangler claims to have performed—comparing photographs from the scene of an incident to tangible evidence—requires training, expertise, and skill. (Kittel Depo. 38:10–41:2, Eicher Decl., Ex. Q, ECF No. 66-3.) The parties do not dispute that Spangler has no training or expertise in accident reconstruction, crime scene investigation, shoe print identification, tire track identification, or vehicle collision investigation. (PSUF Nos. 114A–119A.) Courts routinely apply *Daubert* principles to the analysis of footprints and tire tracks. *See, e.g.*, *United States v. Smith*, 697 F.3d 625, 634–35 (7th Cir. 2012); *United States v. Allen*, 207 F. Supp. 2d 856, 867 (N.D. Ind. 2002). Here, Spangler does not meet any of the requirements that would allow her to express her opinions about the tire tracks, or footprint atop of the hill. While she explained her purported methodology, she provides no evidence that: 1) the scientific community and/or literature accepts it; 2) it has been peer-reviewed; or 3) she has applied these otherwise unvetted principles reliably to the facts of this case. She also admits she has no training in this area,

despite her own expert conceding that training is required to perform these types of analyses. Fed. R. Civ. P. 702; *Daubert*, 509 U.S. 589–90. Accordingly, the Court **SUSTAINS** Defendants' objections, and excludes Spangler's opinion testimony relating to her purported footprint and tire track analysis.

**B.     Section 1983 Claims**

Each of Spangler's federal claims asserts a violation of 42 U.S.C. § 1983. (*See generally* FAC.) To prevail under 42 U.S.C. § 1983, a plaintiff must prove: 1) that he or she was "deprived of a right secured by the Constitution or laws of the United States," and 2) "that the alleged deprivation was committed under color of state law." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). Spangler asserts her first two claims under the Fourth Amendment, and her third under the Fourteenth. (*See generally* FAC.) Two factual theories of liability have evolved.

In her FAC, Spangler alleged that Defendants were liable because "Defendant Schneekloth purposely used his SUV to ram the rear of Decedent's motorcycle with the intent to disable the motorcycle and seize Decedent." (FAC ¶ 13.) While this was the only theory Spangler asserted in her FAC, she now posits that Schneekloth seized Brewer in violation of the Fourth Amendment by pinning him at the top of the hill, at the end of the pursuit.[3] (*See* Opp'n 11–12.) Defendants argue that Spangler should be limited to the theory raised in her FAC, and should not be permitted to argue Defendants are liable even if Schneekloth did not ram Brewer's motorcycle on top of the hill. (Defs. MSJ 21–22.) However, "when issues are raised in opposition to a motion for summary judgment that are outside the scope of the complaint, '[t]he district court should…construe[] [the matter raised] as a request pursuant to rule 15(b)

---

[3] Why this theory of seizure matters is unclear because Spangler concedes: "Schneekloth's show of force in pinning Decedent at the top of the hill was reasonable." (Opp'n 14.) Where a person is seized reasonably, there is no Fourth Amendment violation. *See Medeiros v. City & Cnty. of Honolulu*, No. 11-00221 RLP, 2013 WL 12139152, at *7 (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

of the Federal Rules of Civil Procedure to amend the pleadings out of time.'" *Desertrain v. City of Los Angeles*, 754 F3d 1147, 1154 (9th Cir. 2014) (quoting *Apache Survival Coal. V. United States*, 21 F.3d 895, 910 (9th Cir. 1994)). Accordingly, the Court considers Defendants' potential liability under both theories.

    *1.    Schneekloth Did Not Violate the Fourth Amendment*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. A seizure occurs where there is a "governmental termination of freedom of movement through means intentionally applied." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1989) (emphasis omitted). Where there is a seizure, "the Court must [next] determine whether Defendants' actions were objectively reasonable." *Medeiros v. City & Cnty. of Honolulu*, No. 11-00221 RLP, 2013 WL 12139152, at *7 (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

Pursuing a suspect alone does not constitute a "seizure" within the meaning of the Fourth Amendment, even where the police use flashing lights and sirens to show their authority. *See, e.g.*, *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998) (collecting cases). Instead, a seizure occurs where "there is governmental termination of freedom of movement *through means intentionally applied*." *Brower*, 489 U.S. at 597.

As alleged in her FAC, Spangler half-heartedly argues that her expert's "opinions are consistent with the possibility that the motorcycle was struck by Schneekloth's SUV at a low velocity (e.g., 5 mph) and tumbled off the top of the hill." (Opp'n 9.) Yet, Kittel's opinions support no such thing. The parties do not dispute he cannot offer any opinions regarding the cause of the incident and that he did not discover any evidence that Schneekloth's SUV hit Brewer's motorcycle. (PSUF Nos. 99A–101A.) Similarly, Defendants' expert, Lowi, could not identify any damage to Brewer's motorcycle caused by the SUV hitting it. (*Id.* at 102A–106A.) Kittel even opines that Brewer's motorcycle likely went over the edge of the hill on its wheels

with Brewer in the riding position. (*Id.* at 106A.) Officer Coulter, who is trained in accident reconstruction, investigated the scene of the accident and vehicles, and could not find any evidence indicating the two vehicles made contact either. (*Id.* at 88–90, 92.) Schneekloth also testified that his vehicle did not contact Brewer's at any point. (Schneekloth Decl. ¶ 36, ECF No. 53.)

Spangler cites a portion of Kittel's deposition where he mentions the word "contact" in an effort to create a triable issue. (PSUF No. 107A.) In response to a question about the possible speed of the motorcycle when it went over the hill, Kittel testified: "…it could also be 8 [mph], or 6 [mph] or 5 [mph] depending on where that first contact is up the hill…." (*Id.*; Ex. 1004.) Kittel's statement read in the context of his opinions, as a whole, does not create a material triable issue. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. V. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)); *see also FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (citations omitted) ("In order to avoid summary judgment, a non-movant must show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [her] favor. A non-movant's bald assertions or a mere scintilla of evidence in [her] favor are both insufficient to withstand summary judgment"). Accordingly, Spangler has not created a genuine triable issue in support of her theory that Schneekloth's SUV hit Brewer's motorcycle. *Medeiros*, 2013 WL 12139152, at *7 (granting summary judgment where plaintiff did not present evidence of collision between police cruiser and plaintiff's motorcycle); *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (affirming summary judgment where plaintiff failed to present evidence that there was any contact between police car and plaintiff's motorcycle, and thus no seizure within the meaning of the Fourth Amendment).

Next, Spangler claims the following facts establish a seizure: 1) after being followed by Schneekloth with lights and siren, Brewer stopped at the top of the hill

(PSUF No. 144); 2) Schneekloth admitted that as he approached the hill he lost sight of Brewer for a moment (PSUF No. 148); and 3) "Coulter stated he found evidence that the bike and/or Brewer hit the back of side of the hill prior to landing (PSUF No. 188)." (Opp'n 13.) Spangler's purported footprint and tire tread analysis support her assertion that Brewer stopped on top of the hill. (*See* PSUF 144.) As explained above, Spangler is not qualified to offer these opinions, and thus these excluded opinions cannot support her argument that Schneekloth seized Brewer by making him stop on top of the hill. (*See* Section IV.A.3, *supra*;) *see also Von der Ruhr v. Immtech Intern., Inc.*, 570 F.3d 858, 862–66 (7th Cir. 2009) (discussing standard for lay opinion testimony versus expert testimony in context of summary judgment, and affirming district court's exclusion of unqualified lay opinion).

Spangler also cites the recorded statement of Arlene Currie. Currie witnessed the incident from her office, which had a view of the hill. In her recorded statement, which was taken on the day of the incident, she said, "The motorcycle was at the top of the hill. The officer was not close to him." (PSUF No. 144; Ex. 702Transcript.) The Court doubts whether a reasonable jury would construe Currie's statement to support Spangler's claim that Brewer stopped on top of the hill. However, even if Brewer did stop on top of the hill, there must be more to constitute a "seizure" within the meaning of the Fourth Amendment. *Brower*, 489 U.S. at 598–99.

In *Brower*, the Supreme Court held that the plaintiff alleged a plausible theory of seizure where police officers placed an 18-wheel truck completely across the highway in the path of the suspect's flight, behind a curve, with police cruiser's headlights aimed in such a way as to blind the suspect on approach. *Id.* at 593. The suspect crashing into the roadblock constituted a seizure because the suspect was "stopped by the very instrumentality set in motion or put in place in order to achieve that result." *Id.* at 599. Viewing the evidence in a light most favorable to Spangler, and accepting that Brewer stopped on top of the hill, still does not preclude summary judgment. Unlike *Brower*, Spangler presents no evidence that Defendants used the

embankment as some sort of de facto roadblock in the hopes that they could seize Brewer by pinning him atop the hill. Instead, the parties do not dispute that Schneekloth did not know of the steep drop-off on the other side of the hill, and that Schneekloth was under the impression that the hill would provide an escape opportunity for Brewer. (PSUF Nos. 51A, 59A.) All evidence indicates Brewer drove toward the hill of his own accord, in an effort to evade the police. (*See* PSUF No. 39A.) Under these circumstances, there is no evidence that would allow a reasonable jury to find that the police seized Brewer, within the meaning of the Fourth Amendment, by a "means intentionally applied." *Brower*, 489 U.S. at 597; *see also Medeiros*, 2013 WL 12139152, at *9 (collecting cases, and granting summary judgment under similar factual scenario where plaintiff did not create triable issue under de facto roadblock theory because there was no evidence the police "set up a roadblock that was designed to produce a stop by physical impact if voluntary compliance did not occur"). Accordingly, there are no genuine triable issues of material fact for the jury under this theory either, and the Court **GRANTS** Defendants' Motion for Summary Judgment as to Spangler's Fourth Amendment claims.[4]

### 2. Fourteenth Amendment

Spangler's third claim for relief alleges that Defendants violated her Fourteenth Amendment right to due process. (FAC ¶ 33.) "This circuit has recognized that parents have a Fourteenth Amendment liberty interest in the companionship and society of their children." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (citing *Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991)). However, "only official conduct that 'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborne*, 546 F.3d 1131, 1137 (9th Cir. 2008)

---

[4] The Court declines to address whether Defendants' actions were objectively unreasonable because Spangler has not presented sufficient evidence of a seizure. Also, as noted above, Spangler concedes in her brief that "Schneekloth's show of force in pinning Decedent at the top of the hill was reasonable." (Opp'n 14.)

(quoting *Lewis*, 523 U.S. at 846). "[W]here a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Wilkinson*, 610 F.3d at 554 (citing *Porter*, 546 F.3d at 1140).

Spangler argues that the "purpose to harm" standard does not apply here. (Opp'n 15.) She claims that the Court should apply the "deliberate indifference" standard because "[t]he heightened purpose-to-harm standard applies only to highly fluid and rapidly evolving situations, such as high-speed car chases…." (*Id.*) Spangler uses the timing of Schneekloths conversations with the radio dispatcher to demonstrate that he had time to deliberate. (*See* Opp'n 8.) However, the parties do not dispute that the events leading up to Brewer's death involved a pursuit through the city and construction zones at speeds of up to 60 mph, and on two-lane, winding roads through rolling hills. (PSUF Nos. 31A–33A, 35A–41A.) Moreover, in *Bingue v. Prunchak*, the Ninth Circuit rejected Spangler's argument that the Court should draw a distinction between high-speed chases that pose a danger, and those that do not. 512 F.3d 1169, 1177 (9th Cir. 2008) ("We agree with the Eighth Circuit and decline to try to draw a distinction between 'emergency' and 'non-emergency' situations involving high-speed chases aimed at apprehending a fleeing suspect."). Accordingly, "the *Lewis* standard of 'intent to harm' applies to all high-speed police chases." *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 385 (2007)). Spangler's complete disregard of controlling Ninth Circuit precedent is disappointing.

As discussed above, Spangler presents no evidence establishing contact between the two vehicles such that a jury could infer an intent to harm. Moreover, Spangler does not dispute that: "Deputy Schneekloth never had any intent to harm Decedent in any way." (PSUF No. 73A.) Thus, the Court **GRANTS** Defendants'

14

Motion for Summary Judgment as to Spangler's third cause of action. *Lewis*, 523 U.S. at 846; *Bingue*, 512 F.3d at 1177.[5]

## C. State-Law Claims

When a federal court has dismissed all claims over which it has original jurisdiction, it may, at its discretion, decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring them for a surer-footed reading of applicable law. Certainly, if the federal law claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Jones v. Cmty. Redevelopment Agency of City of L.A.*, 733 F.2d 646, 651 (9th Cir. 1984) ("When federal law claims are dismissed before trial ... pendant [sic] state claims should also be dismissed."); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (district court not required to provide explanation when declining jurisdiction under § 1367(c)(3)).

Because the Court dismisses all of Spangler's federal claims, it declines to exercise supplemental jurisdiction over her remaining claims. Accordingly, the Court **DISMISSES**, without prejudice, Spangler's fourth and fifth claims for battery, and police negligence, respectively.

---

[5] The Court declines to analyze Schneekloth's qualified immunity argument in light of its rulings above.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS, in part,** Defendants' Motion for Partial Summary Judgment (ECF No. 51), and **DISMISSES** Spangler's fourth and fifth causes of action, without prejudice. The Court will issue a judgment.

**IT IS SO ORDERED.**

June 15, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**