# United States District Court
# Central District of California

| | |
|---|---|
| KIM SPANGLER, Individually and as the Personal Representative for DENNIS HOWARD BREWER, Deceased, <br><br>    Plaintiffs, <br><br>  v. <br><br>COUNTY OF VENTURA; WILLIAM SCHNEEKLOTH; AND DOES 1 THROUGH 10, INCLUSIVE, <br><br>    Defendants. | Case No. 2:16-cv-09174-ODW-GJS <br><br> **ORDER GRANTING IN PART, DENYING IN PART, DEFENDANT COUNTY OF VENTURA MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. SECTION 1988 [75]** |

## I. INTRODUCTION

On June 15, 2018, the Court partially granted Defendants County of Ventura and Deputy Sheriff William Schneekloth's Motion for Summary Judgment and entered judgment in favor of Defendants.[1] Defendant County of Ventura ("Defendant") now moves for attorneys' fees in the amount of $87,500. For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Attorney's Fees Pursuant to 42 U.S.C. § 1988 ("Motion").[2]

---

[1] The Court entered Judgment against Plaintiff on Plaintiff's first, second, and third claims for relief and declined to exercise supplemental jurisdiction over the fourth and fifth claims and thus dismissed them without prejudice.

[2] After carefully considering the papers filed in support of and in opposition to the Motions, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Court has recited the facts of this case extensively in its Order Granting Defendants' Motion for Summary Judgment ("Order"), and incorporates that discussion here by reference. (*See* Order, ECF No. 72.)

Briefly, Plaintiff Kim Spangler is the mother of decedent, Dennis Howard Brewer ("Brewer" or "Decedent"). Plaintiff brought claims related to the death of her son following a police chase. (*See generally* First Am. Compl. ("FAC"), ECF No. 21.) Defendant Schneekloth is a Ventura County Sheriff's Deputy and was on patrol in a marked Sherriff's vehicle. (Order 2.) Brewer was driving a motorcycle on a suspended license for driving under the influence about a month prior to the incident. (*Id.*) Later toxicology reports revealed that, on the day of the incident, Brewer had significant methamphetamine and amphetamine levels in his blood. (*Id.*)

During Schneekloth's patrol, he saw Brewer traveling at approximately 60 mph in a 40 mph speed zone, driving over a double yellow line, passing in an unsafe manner, and driving recklessly. (*Id.*) Schneekloth activated his siren and lights to stop Brewer for his traffic violations. (*Id.*) However, Brewer did not pull over and instead attempted to flee by driving through a construction zone at approximately 60 mph. (*Id.*) Brewer eventually drove his motorcycle off the paved road and onto a dirt lot. (*Id.*) He drove up the hill on one of the dried-mud tire tracks with Schneekloth in pursuit. (*Id.* at 3.) While approaching the hillside, Schneekloth had been under the impression that the hill would provide Brewer an avenue for escape. (*Id.*) It turned out that the hill culminated in a steep drop-off, with railroad tracks below. (*Id.*) The drop-off was not visible from the perspective of someone driving up the hill and Schneekloth did not know about the drop-off before pursuing Brewer. (*Id.*) Brewer ultimately fell from the hill to his death. (*Id.*) Schneekloth's vehicle bottomed out before going over the edge, and he backed it down the hill and got out of the car. (*Id.*) Schneekloth walked up the hill, peered over the side, and saw Brewer lying

motionless and tangled in his motorcycle. (*Id.*) Schneekloth called for medical assistance, but Brewer died from the trauma. (*Id.*)

On the motion for summary judgment, the parties disputed exactly how Brewer fell off the hill. (*See id.*) Plaintiff relied on a contact theory that Schneekloth's vehicle hit Brewer's motorcycle causing the fall. (*See id.*) However, Plaintiff presented no evidence that Schneekloth's vehicle ever made any contact with Brewer's motorcycle. (*Id.*) In fact, Plaintiff's accident reconstruction expert, Mark Kittel, testified that he could not find any evidence that there was ever contact between the vehicle and the motorcycle. (*Id.*) Defendants' accident reconstruction expert, Al Lowi, came to the same conclusion. (*Id.*) Plaintiff's expert even opined that Brewer's motorcycle likely left the hill upright, rolling on its wheels, with Brewer on the motorcycle in a riding position. (*Id.*)

As there were no genuine triable issues of material fact, the Court granted summary judgment on the claims over which it had original jurisdiction, and declined to exercise supplemental jurisdiction over the remaining state law claims. (Order 1–2.)

### III. LEGAL STANDARD

**A. Motion for Attorneys' Fees Pursuant to § 1988**

Section 1988 provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). By enacting 42 U.S.C. § 1988, Congress "recognized that private enforcement of civil rights legislation relies on the availability of fee awards." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). To minimize the risk of overcompensation, the district court should award "only the fee that it deems reasonable." *Id.* (citing *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983)). In determining what fee is reasonable, "the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases, and avoiding a windfall to counsel." *Moreno*, 534 F.3d at 1111 (citing *City of Riverside v. Rivera*,

3

477 U.S. 561, 579–80 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

Prevailing defendants may be awarded attorneys' fees only if the plaintiff's "claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 422 (1978); *see also Hughes v. Rower*, 449 U.S. 5, 14–15 (1980) (per curiam) (applying *Christiansburg*). A litigant's duty to avoid frivolous litigation is a continuing obligation. *Christiansburg*, 434 U.S. at 422. Even if the complaint was not initially frivolous, continuing with such claim in bad faith provides an even stronger basis for an award of attorneys' fees. *Id.*

However, "that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Hughes*, 449 U.S. at 14. "There is a significant difference between making a weak argument with little chance of success . . . and making a frivolous argument with no chance of success," and "it is only the latter that permits defendants to recover attorney's fees" under § 1988. *Khan v. Gallitano*, 180 F.3d 829, 837 (7th Cir. 1999).

## IV. DISCUSSION

### A. Motion for Attorneys' Fees

The issue before the Court is whether Plaintiff's claim was frivolous or became frivolous at some point during the litigation.

Defendant requests that the Court award attorneys' fees in the amount of $87,500 because that amount represents the "reasonable fees incurred by Defendant after Plaintiff was put on notice that her claims were without merit." (Mot. 1.) Specifically, Defendant proposes the March 13, 2018, as the date by which Plaintiff should have known that her lawsuit was frivolous. Defendant asserts that it should recover attorneys' fees accrued from that date until May 31, 2018. (Mot. 9; Dec. of James S. Eicher, Jr. ("Eicher Dec.") ¶ 8, ECF No. 76.) On March 13, 2018, Plaintiff's own expert, Mark Kittel, testified in deposition that he found no evidence of a collision. (Mot. 12.) Additionally, by March 13, 2018, a Simi Valley police officer

had investigated the incident and testified there was no evidence of a collision. Also by that date, Defendants' accident reconstruction expert had also corroborated that there was no evidence of a collision. (Mot. 12.) Further, Defendant represents, and Plaintiff does not dispute, that Plaintiff's prior counsel withdrew shortly after Defendants produced records, including the Simi Valley Police Department's traffic collision report, Brewer's toxicology records, the reports and findings of the Ventura County Sheriff's Office, the summary of witness statements, and the transcript Schneekloth's interview on the day of the incident. (Mot. 12.) After March 13, 2018, despite the discovery cut-off deadline having lapsed, Plaintiff moved to re-open discovery to take an additional deposition to oppose Defendant's motion for summary judgment. (Mot. 13.) After receiving the Court's permission and taking the deposition, Plaintiff failed to use the deposition in opposition to Defendant's motion for summary judgment.

In opposing Defendant's Motion, Plaintiff argues that her claim was not frivolous and her position was simply not "well articulated in the opposition to the motion for summary judgment." (Opp'n to Mot. 9–10, ECF No. 86.) In an attempt to clarify her position, Plaintiff explains that her theory regarding the incident is based on Plaintiff's lay witness opinion that Brewer's motorcycle stopped at the top of the hill, despite Plaintiff not being present at the time of the incident and not actually witnessing the incident occur. (*See* Opp'n 10–11.) What Plaintiff offers in support of her claims appears to be nothing more than pure speculation. *See* Fed. R. Evid. 602 (stating that a witness may "testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter").

Plaintiff does not dispute that she was aware that a Simi Valley police officer, Defendants' expert, and her own expert all found that there was no evidence of a collision and that she knew of this fact at least as of March 13, 2018. Further, Plaintiff does not dispute that she chose to re-open discovery for an additional deposition that she did not use in opposition to the motion for summary judgment

despite representing to the Court that this deposition was necessary for the opposition. Plaintiff knew or at the very least, should have known, that by March 13, 2018, when her own expert testified that there was no evidence of contact between the vehicle and motorcycle, that her claim became frivolous, unreasonable, or groundless. By that time, the discovery cutoff deadline had passed, and Plaintiff had the opportunity to conduct a significant amount of discovery in support of her claims. However, Plaintiff was unable to put forward any evidence in support of her contact theory. Based on the Court's review of the papers and the pleadings in this case, the Court finds that Plaintiff's pursuit of her contact theory in support of her claims, particularly after the discovery cut-off deadline passed and after her own expert was deposed, was frivolous, unreasonable, or groundless. *See Galen v. County of Los Angeles*, 477 F.3d 652, 666–68 (9th Cir. 2007) (affirming a district court's finding that the plaintiff's continuation of litigation even after discovery failed to uncover any evidence in support of his claim warranted an award of attorneys' fees).

**B.     Reasonableness of Attorneys' Fees**

Next, the Court must determine what amount of attorneys' fees are proper.

In determining the amount of attorneys' fees award under § 1988, a court must utilize the "lodestar" method of calculating the award, accomplished by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. This includes consideration of the 12–factor test set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1064–65 (9th Cir. 2006).

The *Kerr* factors assist the Court to determine whether the lodestar figure is reasonable and if it should be adjusted. *Kerr*, 526 F.2d at 70. The factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment

by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* at 70. These factors are "intended to provide district courts with guidance" when adjusting the lodestar and "were never intended to be exhaustive or exclusive." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986). Courts "need not consider all twelve factors, but only those called into question by the case at hand and necessary to support the reasonableness of the fee award." *Kessler v. Assocs. Fin. Servs. Co. of Haw.*, 639 F.2d 498, 500 n.1 (9th Cir. 1981).

Courts, in the exercise of its discretion, can impose a reduction of hours or lodestar of not greater than 10% without a more specific explanation. *Moreno*, 534 F.3d at 1112. A reduction of more than 10% requires a clear and concise explanation for the percentage(s) selected. *See id.*; *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). The court may adjust the award upward or downward based on additional factors that bear upon reasonableness. *Chalmers*, 796 F.2d at 1212; *Kerr*, 526 F.2d at 70; *Hensley*, 461 U.S. at 434. However, the *Kerr* "factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate," rather than the subsequent determination of whether to adjust the fee upward or downward. *Hensley,* 461 U.S. at 434 n.9. Fee applicants bear the burden of proof and must "submit evidence supporting the hours worked and rates claimed." *Id*. at 433.

**1. Reasonable Hourly Rate**

Defendant seeks $200 per hour for attorneys and $85 per hour for paralegals. To determine whether the hourly rates are reasonable, courts consider whether the "requested rates are in line with those prevailing in the community for similar services

by lawyers of reasonably comparable skill, experience, and reputation." *Trs. of S. Cal. IBEW–NECA Pension Plan v. Electro Dynamic Servs.*, CV 07–05691-MMM-PLAx, 2008 WL 11338230, at *5 (C.D. Cal. Oct. 14, 2008) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). The relevant community is the district in which the adjudicating court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The party seeking attorneys' fees may satisfy its burden of showing that the proposed hourly rate is reasonable by submitting affidavits of counsel, affidavits of other counsel in the relevant community, and by providing case law examples of the relevant community rate. *See id.* at 980–81.

Defendant submits a declaration from its counsel of record, James S. Eicher, Jr., detailing his experience and that of other counsels of record representing Defendant. (Eicher Dec. ¶¶ 1–5.) Mr. Eicher has previous experience defending public entities and law enforcement officers in civil rights matters and previously worked as a Deputy District Attorney for Ventura County. (*Id.* ¶ 2.) Attorney Paul Beach has 25 years of experience defending public entities in civil rights and general civil litigation. (*Id.* ¶ 4.) Attorney Rocco Zambito, Jr. also has experience representing public entities and their employees in civil rights, excessive force, and general civil litigation since 2015. (*Id.* ¶ 5.) Defendant did not submit any information regarding the paralegals in this case beyond the fact that they were billed at $85 per hour and spent 20 hours on the case between March 13, 2018 and May 31, 2018.

Plaintiff did not oppose Defendant's proposed hourly rates. "Once the fee applicant has proffered such evidence, the opposing party must produce its own affidavits or other evidence to rebut the proposed rate." *Cortes v. Metro Life Ins. Co.*, 380 F. Supp. 2d 1125, 1129 (C.D. Cal. 2005) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). Accordingly, the Court must rely on Mr. Eicher's declaration in support of the Motion. Mr. Eicher is a licensed practitioner who has extensive experience and familiarity with civil rights litigation, who is also familiar with the rates for experienced paralegals. Mr. Eicher

further declared that he understands these rates to be reasonable and that they "are at or below the market rate for attorneys of similar experience level in the Los Angeles area." (Eicher Dec. ¶ 6.) As such, the Court accepts the proposed hourly rates for Defendant's attorneys and paralegals as reasonable and no reductions in rates are necessary.

### 2. Number of Hours Reasonably Expended

"A district court has wide latitude in determining the number of hours that were reasonably expended by the prevailing lawyers." *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001). "The fee applicant bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).

Here, Defendant alleges that they spent 429 attorney hours and 20 paralegal hours from March 13, 2018, to May 31, 2018. (Eicher Dec. ¶¶ 8–9.) Defendant represents that it spent in excess of that amount of time,[3] but is not requesting additional fees related to the preparation of pre-trial documents and the Motion currently before the Court. (*Id.* ¶ 9.)

Although Plaintiff does not necessarily dispute the number of hours spent, Plaintiff objects on the basis that Defendant failed to provide "any billing records upon which an award might be based." (Opp'n 19.) In response, Defendant argues that a breakdown of its billing records is not required and that Mr. Eicher's declaration is more than sufficient for an award of attorneys' fees. (Reply 4, ECF No. 87.) Defendant further argues that its voluntary reduction of fees indicates that the fees requested are "surely reasonable."[4] (*Id.*) However, without a billing statement, it is

---

[3] In total, Defendant claims it has spent over 1600 hours on this matter at a total cost exceeding $310,000. (*Id.* ¶ 7.)

[4] The Court notes that an attorney's voluntary reduction of fees does not automatically make the fee request reasonable. In some instances, it may be indicative that, perhaps, the attorney spent an unreasonable amount of time. Nonetheless, the Court commends Defendant for voluntarily reducing its fees and limiting its request to a reasonable time period, from March 13, 2018, to May 31, 2018.

9

difficult for the Court to determine whether the hours expended were reasonably necessary. Defendant urges the Court not to be "green-eyeshade accountants" and to simply "take into account [its] overall sense of a suit, and . . . use estimates in calculating and allocating an attorney's time." (Mot. 6 (citing *Fox v. Vice*, 563 U.S. 826, 838 (2011).) The Court will do just that.

Considering the substantial experience of Defendant's counsel, the Court finds 429 attorney-hours over two and a half months excessive.[5] Defendant claims that it has spent more than 1600 total hours on this matter. Defendant's first appearance in this case was March 9, 2017, through a stipulation to extend time to respond to the complaint. Defendant's last action was Defendant's reply in support of this Motion on August 6, 2018. From March 9, 2017, to August 6, 2018, approximately 17 months, Defendant spent 1600 hours in attorney time. However, in two and a half months, the time period for which Defendant seeks to recover fees, Defendant spent 429 hours, roughly 171.6 hours per month, more than 25% of the total time spent on the entire litigation.

Without the benefit of a billing statement, the Court is aware only that, over the two-and-a-half-month period, Defendant opposed the motion to re-open discovery, participated in the deposition of Tyson Santos, and prepared the motion for summary judgment. (Mot. 3–4.) Defendant indicated that it was not seeking to recover fees related to the instant motion or the preparation of other pre-trial documents. Although a motion for summary judgment can be time-intensive, the Court cannot justify how Defendant spent 429 hours over two and half months. Defendant has the burden of proof to submit sufficient evidence supporting the number of attorney-hours worked. *See Gates*, 987 F.2d at 1397. Defendant has failed to meet its burden here. Defendant's failure to submit its billing statement deprives the Court of the opportunity to carefully evaluate the reasonableness of the work done. Consequently,

---

[5] Without any information regarding what paralegal work was done, the Court declines to award any paralegal fees.

the Court reduces the requested attorney hours by 10%. As such, applying the lodestar method, multiplying the number of hours reasonably expended on the litigation (429 x 90%) by a reasonable hourly rate ($200), the Court finds this adjusted figure is $77,220.[6]

### 3. Plaintiff's Ability to Pay

In addition to the *Kerr* factors, in cases involving 42 U.S.C. §§ 1981 or 1983, courts should consider the financial resources of the plaintiff in awarding fees to a prevailing defendant. *Miller v. Los Angeles Cty. Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987). "This is particularly true when the fee request against an individual plaintiff is sizable . . . . While an award of attorney's fees for a frivolous lawsuit may be necessary to fulfill the deterrent purposes of 42 U.S.C. § 1988 . . . the award should not subject the plaintiff to financial ruin." *Id.* (citing *Charves v. Western Union Tel. Co.*, 711 F.2d 462, 465 (1st Cir. 1983) (recognizing that "the amount of the award, even in a frivolous case, may be a reduced assessment, dependent upon the plaintiff's ability to pay").

There is considerable dispute regarding Plaintiff's financial resources. Plaintiff submitted a signed declaration under penalty of perjury in opposition to Defendant's motion to tax costs indicating that her adjusted gross income for 2017 was $21,500. (Decl. of Kim Spangler ("Spangler Decl.") ¶ 3, ECF No. 77-1.) In response, Defendant submits, as an exhibit, Plaintiff's affidavit to appeal in forma pauperis. (Decl. of Rocco Zambito, Jr. ("Zambito Decl.") Ex. A, ECF No. 78-1.) In this affidavit, Plaintiff claimed to receive a gross monthly pay of $4100 per month in 2017, and a gross monthly pay of $2000 from January 2017 through August 2017 from another job. In total, this would mean that Plaintiff's gross income for 2017 was $63,200. Despite having two potential sources of income, Plaintiff indicates that her monthly pay is "variable based on the number of patients and shift coverage for vacations and illnesses." (Spangler Decl. ¶ 4.) Plaintiff also informs the Court that

---
[6] $200 (rate) x 386.1 (hours) = $77,220.

11

she works only approximately three days a week and that she has had difficulty physically and emotionally since the death of her son. (*Id.* at ¶ 2.) Based on this, it is unlikely that Plaintiff was working both jobs concurrently as Defendant hypothesizes. The range of Plaintiff's income is somewhere between $21,500 and $63,200; however, in reviewing the pleadings and evidence in support of Plaintiff's income, the Court finds that Plaintiff's income is likely closer to $21,500 than $63,200.

In terms of expenses, Plaintiff's monthly expenses for rent, food, internet, telephone, and other costs are $1416 per month, which equals $16,992 annually. (Spangler Decl. ¶¶ 11–18.) In Plaintiff's in forma pauperis request, she claimed to have to $2070 in monthly expenses, which equals $24,840 annually. (Zambito Decl. Ex. A.) Plaintiff also owes a balance to the Internal Revenue Service ("IRS") on a tax repayment plan. (*Id.*) Plaintiff's bank accounts have a combined balance of approximately $3600, with more than half owed to the IRS. (Spangler Decl. ¶¶ 5–6.) Plaintiff's expenses are somewhere between $16,992 and $24,840.

Although the Court recognizes Defendant's right and ability to seek attorneys' fees pursuant to 42 U.S.C. § 1988, the Court is not in the business of causing financial ruin or homelessness, and neither should Defendant County of Ventura.[7] Even were the Court to accept Defendant's version of the evidence, Defendant fails to demonstrate how Plaintiff can afford to pay $87,500 in requested fees, $77,220 in reduced fees, or even a fraction of either amount without substantial hardship. The Court is deeply disturbed that the County of Ventura would attempt to recover such a sizable fee against an individual, knowing that, were the Court to award fees, any such award would likely cause Plaintiff financial ruin.

Accordingly, weighing all of the factors discussed above and declining to cause or contribute to Plaintiff's financial ruin, the Court awards Defendant $1035 in

---

[7] Ventura County's homeless population grew by 12.8% in 2018 compared to 2017, resulting in a total of 1299 adults and children who were homeless in 2018. Ventura County Executive Office, *Homeless County and Subpopulation Survey* 5 (2018), http://www.venturacoc.org/images/VC_2018_Homeless_Count_and_Survey_Final_Report.pdf.

attorneys' fees, an amount equal to half of Plaintiff's monthly expenses.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Defendant's Motion for Attorneys' Fees and **AWARDS $1035**. (ECF No. 75.)

**IT IS SO ORDERED.**

October 24, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**